Lillard v. Lierley.

J. W. LILLARD, Administrator of the Estate of M. L. SPAULDING, Defendant in Error, v. WILSON LIERLEY, Plaintiff in Error.

Springfield Court of Appeals, April 20, 1918.

1. **COMMON LAW: Statutes: Statutes and Decisions of Other States: Pleading and Proof.** Statutes and decisions of the courts of other states must be pleaded and proved in each case.

2. **EVIDENCE: Presumptions: Laws of Other States.** Nebraska never having been an English possession it cannot be presumed that the common law is in force, but it will be presumed that the law is the same as the statute and constructive law of the forum.

3. ———: ———: ———: **Limitations.** In an action on a Nebraska note, where only the five-year Statute of Limitations of such State was shown in evidence, and that maker left such State soon after executing the note, Revised Statute 1909, section 1897, providing that limitations does not run in favor of one absent from the State, will be presumed to be the law of Nebraska.

4. ———: **Judicial Notice.** Courts of Missouri will take judicial notice of statutes of the territory of Louisiana before the State was carved out of it, because such were acts of an antecedent government of the State.

5. ———: **Laws of Other States: Presumptions.** When Nebraska was carved from Louisiana Territory and made Indian country, the laws of the territory became inoperative, and cannot be presumed to still be the law of Nebraska.

6. **BILLS AND NOTES: Interest.** Where note contained promise to pay interest, but amount was left vacant, six per cent should be allowed.

Appeal from Greene Circuit Court.—*Hon. Arch A. Johnson*, Judge.

AFFIRMED AND REMANDED (*with directions.*)

*A. C. Kice* and *Watson & Page* for plaintiff in error.

*J. S. Clarke* for defendant in error.

FARRINGTON, J.—I. The defendant sued out a writ of error in this court complaining of the action of the trial court in rendering a judgment against him in a suit brought on a promissory note. The petition is as follows: (Formal parts omitted.)

"Plaintiff says that he is the legally appointed and now acting administrator of the estate of M. L. Spaulding, deceased, and as such administrator has the legal care and control of the assets of said estate.

"Plaintiff for his cause of action against the defendant states that the defendant, for value received, on the 27th day of January, 1909, promised to pay the said M. L. Spaulding six months after date the sum of $286.90, with interest from date at the rate of ten per cent perannum, and if the interest is not paid when due to become as principal and bear the same rate of interest.

"The said note nor any part thereof has not been paid and the same together with all accrued interest is now due and owing said plaintiff as such administrator, said note herewith filed and made part of this petition.

"Wherefore plaintiff prays judgment for said sum of $286.90 with accrued interest and cost of this suit."

The note is as follows:

"286.90                    Wallace, Neb., 1/27, 1909.

"Six months after date, for value received, I, or we, jointly of severally, promise to pay to M. L. Spaulding, or order, two hundred eigthy-six dollars and ninety cents, at the Citizens Security Bank, Wallace, Nebraska, with interest at the rate of——per annum from———— until paid. Interest payable annually, and defaulting interest to draw the same rate of interest as principal. The makers, sureties, endorsers and guarantors of this note hereby severally waive presentment for payment, notice of non-payment, protest and notice of protest and diligence in bringing suit against any party hereto

and consent that time of payment may be extended without notice thereof.

"WILSON LIERLEY."

Defendant in his answer made the following plea:

"Further answering, defendant states that under Sections 6575 and 6580 of the Compiled Statutes of the State of Nebraska actions upon a promise in writing must be commenced within five years from the time the cause of action accrues, and more than five years had elapsed from the accruing of this cause of action and the filing of this suit.

"Wherefore said cause of action is barred under the Statutes of Limitation of said State of Nebraska, the place wherein said promise in writing upon which this cause of action is based was executed, and defendant herein asks to be discharged with his costs."

It appears from the record and briefs filed in this court that the cause was tried on the evidence adduced at the trial but that for the purpose of this appeal the parties stipulated to submit the case here on an agreed statement of facts, which we now set forth:

"It is hereby agreed between plaintiff and defendant in this cause that the debt for which the note in suit was brought was contracted in the State of Nebraska, and that the note in suit was executed, signed and delivered by the payor to the payee in the State of Nebraska, and at the date of the execution and delivery of the note the defendant lived in the State of Nebraska and plaintiff lived in the State of Missouri, and shortly after the note in question matured and the right of action accrued, the defendant moved to the State of Missouri and remained in this State until this suit was filed.

"And it is further agreed that more than five years elapsed from the date when the right of action accrued on the note until the holder and payee died, and that more than five years elapsed from the date the cause of action accrued until this suit was filed.

"It is further agreed that at the date this suit was filed the defendant lived in the State of Missouri, and

that the payee and holder of the note died in Missouri, and that his administrator took out letters of administration in this State.

"It is further agreed and understood that under the statutes of the State of Nebraska a cause of action is barred by limitation of five years on promissory notes after the cause of action accrues." •

In the course of this opinion we will refer to the parties as plaintiff and defendant, just as the cause stood in the trial court, and not as plaintiff in error and defendant in error.

The plaintiff stated in oral argument that in the agreed statement of facts there was omitted by mistake and oversight the fact that section 6590, or subsection 20, of the chapter on "Time of Commencing Civil Actions" Compiled Statutes of Nebraska 1911, and asks that we consider that section in determining the cause. It reads as follows:

"If, when a cause of action accrues against a person, he be out of the State, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he come into the State, or while he is absconded or concealed; and if after the cause of action accrues he depart from the State, or abscond, or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

Defendant refused to agree that we consider section 6590, above quoted, and we must therefore take the case as it comes to us in the regular way and cast our decision upon the petition, answer and agreed statement of facts, which will allow that we consider the evidence, the law of Nebraska as set out in section 6575, subsection 5, Compiled Statutes of Nebraska 1911, which is as follows:

"Civil actions can only be commenced within the time prescribed in this title, after the cause of action shall have accrued," and section 6580, subsection 10, Id., which is as follows:

"Within five years, an action upon a specialty, or any agreement, contract, or promise in writing, or foreign judgment."

We are asked by the defendant to consider what the Supreme Court of Nebraska has held with reference to the Statute of Limitations in that State, but the decision cited in the brief is not shown to have been introduced in evidence. Under repeated holdings in this State we cannot take judicial notice of the decisions of a sister State; such decisions must be pleaded and proven in each case. [Otto v. Pryor,—Mo. App.— 193 S. W. 28; Sterling v. Parker-Washington Co., 185 Mo. App. 192, 170 S. W. 1156; Gibson v. Railroad, 225 Mo. l. c. 483, 125 S. W. 453; Snuffer v. Karr, 197 Mo. 182, 94 S. W. 983.]

This case must therefore be decided on the record that is before us and the law that is applicable to the facts contained in such record.

The record discloses that were this case to be decided by the Statutes of Limitation in force in Missouri the cause of action would not have been barred because ten years is fixed as the term within which action must be brought. However, section 1896, Revised Statutes 1909, provides that if this action is barred in Nebraska, the place of making and performing the contract, it will be barred here. [Coryell v. Railway Co. (Mo.), 201 S. W. 77; Frizell G. & S. Co. v. Railway Co. (Mo.), 201 S. W. 78 McCoy v. Railway, 134 Mo. App. 622, 114 S. W. 1124.]

The two sections of the Nebraska statutes introduced in evidence and the stipulation of facts clearly show that such cause of action was barred in Nebraska if not brought within five years after the same accrued. Therefore, in the absence of any other showing, this cause being barred in Nebraska would consequently be barred here. There is, however, this showing in the agreed statement of facts: "Shortly after the note in question matured and the right of action accrued the defendant moved to the State of Missouri and remained in this State until this suit was filed." This is a

Lillard v. Lierley.

solemn admission that the defendant "left the realm" or left the jurisdiction of the courts of Nebraska before the five years had expired. The plaintiff did not have the five years given him by the statutes of Nebraska within which he could sue the defendant on the Nebraska contract after it had matured. What effect this had on the running of the statute in Nebraska is not shown in evidence. Therefore the plaintiff has asked us to consider section 6590, hereinbefore quoted, which would stop the operation of the five year limitation, but this, as before shown, cannot be done because it is a law of a sister State neither pleaded nor proven. The proposition then presented is: What is the law by which this condition is governed?

Nebraska was never an English possession, and therefore unlike that part of the United States which was at one time a possession of Great Britain or a part of the original thirteen colonies we cannot presume that the common law was in force; and at this place we may say that the common law of England in the fourth year of the reign of James the First did not have a statute providing for the abatement of the Statute of Limitations in cases where defendant was without the realm of England or beyond the four seas which meant beyond the jurisdiction of the English courts. The first statute which was passed seems to have been in the twenty-first year of James the First, and a statute applying to the absence of the defendant in the fourth and fifth of Anne, chapter 16 [See, 17 R. C. L. p. 833, secs. 194, 195; 2 Wood on Limitations (4 Ed.), pp. 1683, 1684, Title, "English Statutes of Limitation."]

We are therefore confronted with a case where the defendant left the jurisdiction of the courts of Nebraska after the cause of action accrued and before the time had expired and before the statute of Missouri had run. To what law must we now turn to control the case?

It has been universally held that where a cause of action accrued in a foreign State and the local laws

of such State are not shown, and it is such a State in which we could not presume that the common law was in force, we could and would then apply the law of Missouri, both statutory and constructive. [Plato v. Mulhall, 72 Mo. 522; Hazelett, v. Woodruff, 150 Mo. 534, 52 S. W. 1048; State ex rel. Goldsoll v. The Chatham National Bank, 80 Mo. l. c. 631; Burdict v. Railway Co., 123 Mo. 221, 27 S. W. 453; Lee v. Railway Co., 195 Mo. l. c. 415, 416, 92 S. W. 614; Mathieson v. Railroad, 219 Mo. l. c. 550, 118 S. W. 9; Coleman v. Lucksinger, 224 Mo. l. c. 14, 123 S. W. 441; Rashall v. Railroad, 249 Mo. l. c. 516, 155 S. W. 426.]

The court in the case of Smith v. Aultman, 120 Mo. App. 462, 96 S. W. 1034, in the absence of a showing of what was the law of limitations in the State of Arkansas applied the law of limitations of Missouri to the cause which had accrued in Arkansas. [See, also, Bain v. Arnold, 33 Mo. App. 631; Witascheck v. Glass, 46 Mo. App. l. c. 215; Kollock v. Emmert & Co., 3 Mo. App. l. c. 570.] These cases all go to show that where Missouri courts are called upon to decide causes of action which accrue in and are governed by the laws of a sister State and there is no direct evidence of what the law of such State is nor anything from which the court can presume that the law is different from that of Missouri, such courts will then presume that the law of the sister State is the same as that of our own and will under such circumstances apply the law of Missouri to the case. [Davis v. McColl, 179 Mo. App. l. c. 202, 203, 166 S. W. 1113.]

In this case it is admitted that defendant left the jurisdiction of Nebraska after the statute had begun to run and before the full time had expired. We cannot look to section 6590, Compiled Statutes of Nebraska 1911, as the plaintiff would have us do, and say that the time of the absence of the defendant from Nebraska must be deducted from the five years. Under the authorities cited we must look to the law of the forum. Therefore, section 1897, Revised Statutes 1909 (of Missouri), comes into play and gives the exact relief

that plaintiff asks for under the Nebraska statute which he failed to show in his agreed statement of facts was put in evidence. The law of Missouri governing this question is that the time a defendant is absent from the State or is without the jurisdiction of the courts of the State after the cause of action had accrued and before the full time has run, such period of absence will be deduced from the time given within which suit may be brought. We therefore conclude that under the admitted facts of the case the five year Statute of Limitations of Nebraska had not yet run its full course so as to bar a recovery.

It was held in Guilbert v. Kessinger, 173 Mo. App. 680, 160 S. W. 17, that where by a statute of Kansas in reference to persons outside the State a cause of action is not barred in that State, a suit brought in Missouri on a cause arising in Kansas is not barred in this State. Applying that rule to the present case we must presume that the statute dealing with those who leave the jurisdiction of the State of Nebraska is the same as the statute governing the subject in Missouri. That being the case the defendant could not plead and rely on the Statute of Limitations had this suit been instituted in Nebraska on account of his absence from that State. That being true and such time not having elapsed as would be a bar to the action under the Missouri Statutes, the action is not barred.

II. In looking up the question of the Statute of Limitation which at one time covered the territory of which Nebraska formed a part, we find in the territorial laws of Louisiana, passed on July 4, 1807, an act on limitation to the rights of certain causes of action, found in the Territorial Laws of Missouri, Vol. 1, p. 144, which, after providing five years to be the time within which an action may be brought in the Territory of Louisiana which afterward became the Territory of Missouri, provided that if a defendant remove out of the district or territory, where he resided when such a cause of action accrued, within the respective

times limited by the act, he was not permitted to plead the Statute of Limitations in bar of the action.

An interesting history of the territory which comprised that part of the country from which the States of Missouri and Nebraska were carved will be found in the case of Clark v. Allaman, 21 Kan. 206, 80 Pac. 59, 70 L. R. A. 971, wherein it is shown that all the land known as the Louisiana Purchase was ceded by France in 1803 to the government of the United States, and by a congressional act of March 26, 1804, the territory which was ceded from France was divided in two territories.; all of that part of the Louisiana Purchase which is now south of the thirty-third parallel and is now the State of Louisiana was known as the Territory of Orleans, and all of that territory north of the parallel including the remaining part of the purchase was known as the District of Louisiana the government of which was placed in the hands of the governor and judges of the Territory of Indiana. [2 Stat. at L., 283, Chap. 238.]  On March 3, 1805, the District of Louisiana was changed in name to the Territory of Louisiana and legislative authority was placed in a governor and judges of the territory. [2 Stat. at L., 231, Chap. 31.]  Afterward, in 1812, the Territory of Louisiana was changed in name to the Missouri Territory.  The Missouri Territory covered not only Missouri, but Kansas and Nebraska as well. [2 Stat. at L., 743, Chap. 95.]

Undoubtedly this Statute of Limitation passed by the legislative body for the Territory of Louisiana was in force over that area now the State of Nebraska until 1821 when the State of Missouri was carved out of the Territory of Missouri, and we take judicial notice of that act because such laws were that of an antecedent government of the State of Missouri to which we as a State are direct successor. [1 Jones on Evi., pp. 538, 539, sec. 112 B; United States v. Perot, 98 U. S. 428, 25 L. Ed. 251; Fremont v. United States, 58 U. S. 442, 15 L. Ed. 241; United States v. Chaves,

Lillard v. Lierley.

159 U. S. 452, 40 L. Ed. 215; Davis v. McColl, 179 Mo. App. 1. c. 204, 166 S. W. 1113; Coy v. Railroad, 186 Mo. App. 408, 172 S. W. 446.]

After Missouri was formed in 1821 as a State, on June 30, 1834, Congress ordained that all that part of the United States west of the Mississippi River and not within the states of Missouri and Louisiana and the Territory of Arkansas which was formed in 1819, should be taken, for the purposes of the act, to be Indian country and certain regulations were prescribed for its government. For judicial purposes Nebraska was attached to the State of Missouri. [4 Stat. at L., 729, Chap. 161.] And it has been held that after that time the territorial laws of Missouri had no force and effect in the Indian country—after that country ceased to be a part of the Territory of Missouri. [St. Louis & S. F. Ry. Co. v. O'Loughlin, 49 Fed. 440.] We must therefore hold that the Statute of Limitation referred to, passed by the territorial Legislature of the Territory of Louisiana, afterward in force in the Territory of Missouri which included what is now the State of Nebraska, became inoperative when Nebraska was by act of Congress ordained Indian country, which it remained until the formation by Congress of the Territory of Nebraska in 1854. It results that on account of absence of proof of what the law of Nebraska is where a defendant leaves that State after the cause of action accrued and before the action was barred, the laws of Missouri must govern.

III.  Defendant complains of the amount of interest allowed in the judgment. On examining the copy of the judgment sent here we find that the court allowed the judgment to draw eight per cent compound interest. On examining the note, filed as an exhibit in the case and hereinbefore copied, it will be noted there was a promise to pay interest but that the rate was left blank. Under our ruling in the case of Coombes v. Knowlson, 193 Mo. App. 554, 182 S. W. 1040,

the legal rate of six per cent is the amount that can be charged. We must therefore remand the cause with directions to enter the judgment heretofore rendered except as to the interest, and that that be fixed at six instead of eight per cent. *Sturgis, P. J.,* and *Bradley, J.,* concur.